IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SONJA N. WILLIAMS AND SHOCKTHEORY DLV, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| TAVA VENTURES, INC., TAVA LIFESTYLE, LLC, LACORE ENTERPRISE, LLC, LACORE LOGISTICS, LLC, LACORE NUTRACEUTICALS, LLC, CLAVON BROWNING, ANTHONY T. FLEMING, KEVIN D. HARRIS, TKAY WALKER, NINA MOORER, JANELLA SIMPSON, KENNETH LLOYD, CHANTE LLOYD, TERRY LACORE, JENIFER GRACE, LACHELLE PIERRE, AND ARK VENTURES, | ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO. 3:23-cv-00854 |
| Defendants. | ) | |

## ORIGINAL COMPLAINT

Plaintiffs Sonja N. Williams and ShockTheory DLV, Inc., by their attorneys, complain of Defendants Tava Ventures, Inc., Tava Lifestyle, LLC, LaCore Enterprises, LLC, LaCore Logistics, LLC, LaCore Nutraceuticals, LLC, Clavon Browning, Anthony T. Fleming, Kevin D. Harris, Tkay Walker, Nina Moorer, Janella Simpson, Kenneth Lloyd, Chante Lloyd, Terry LaCore, Jenifer Grace, LaChelle Pierre, Ark Ventures (collectively "Defendants")[1], and states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28

---

[1] Tava Lifestyle, LLC and Tava Ventures, Inc. are together referred to as "**Tava**." LaCore Enterprises, LLC, LaCore Logistics, and LaCore Nutraceuticals, LLC are together referred to as the "**LaCore Companies**." Tava and LaCore Companies are referred to as the "**Corporate Defendants**." Clavon Browning, Anthony T. Fleming, Kevin D. Harris, Tkay Walker, Nina Moorer, Janella Simpson, Kenneth Lloyd, Chante Lloyd, LaChelle Pierre, and Ark Ventures are together referred to as the "**Associate Defendants**." Defendants individually are referred to by their last names or full corporate names.

U.S.C. §§ 1331, 1338, and 1367.

2.    This Court has personal jurisdiction over the Defendants because they are either residents of Texas or because they have conducted business in the state of Texas.

3.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because at least one of the Defendants reside in this judicial district and because a substantial part of the events giving rise to the claims asserted occurred in this judicial district.

## PARTIES

4.    Sonja N. Williams is an individual and resident of the State of Georgia.

5.    SockTheory DLV, Inc. is a Georgia corporation with its principal place of business located at 3355 Lenox Rd NE 750, Atlanta, Georgia.

6.    Tava Ventures, Inc. is a corporation formed under the laws of Texas with its principal place of business located at 901 Sam Rayburn Highway, Melissa, Texas. Tava Ventures, Inc. may be served through its registered agent The Grace Firm, PC at 901 Sam Rayburn Highway, Melissa, Texas, 75454.

7.    Tava Lifestyle, LLC is an unincorporated entity derived from Tava Ventures, Inc. Tava Lifestyle, LLC may be served through its parent company Tava Ventures Inc. by serving Tava Ventures, Inc's registered agent, The Grace Firm, PC at 901 Sam Rayburn Highway, Melissa, Texas, 75454.

8.    LaCore Enterprises, LLC is a limited liability company formed under the laws of Texas with its principal place of business located at 901 Sam Rayburn Highway, Melissa, Texas. LaCore Enterprises, LLC may be served through its registered agent The Grace Firm, PC at 901 Sam Rayburn Highway, Melissa, Texas, 75454.

9.    LaCore Logistics, LLC is a limited liability company formed under the laws of

Texas with its principal place of business located at 901 Sam Rayburn Highway, Melissa, Texas. LaCore Enterprises, LLC may be served through its registered agent The Grace Firm, PC at 901 Sam Rayburn Highway, Melissa, Texas, 75454.

10.     LaCore Nutraceuticals, LLC is a limited liability company formed under the laws of Texas with its principal place of business located at 901 Sam Rayburn Highway, Melissa, Texas. LaCore Enterprises, LLC may be served through its registered agent The Grace Firm, PC at 901 Sam Rayburn Highway, Melissa, Texas, 75454.

11.     Clavon Browning is an individual and resident of the state of Louisiana. He may be served with process at 3108 Cleo Dr., Marrero, Louisiana, 70072.

12.     Anthony T. Fleming is an individual and resident of the state of Georgia. He may be served with process at 2426 Crescent Park Court, Number 12, Atlanta, Georgia, 30339.

13.     Kevin D. Harris is an individual and resident of the state of Georgia. He may be served with process at 5265 Abbey Park Lane, Mableton, Georgia, 30126.

14.     Tkay Walker is an individual and resident of the state of Texas. She may be served with process at 9703 Fleming Springs Drive, Humble, Texas, 77396.

15.     Nina Moorer is an individual and resident of the state of Georgia. She may be served with process at 1850 Callaway Ridge Drive N.W., Kennesaw, Georgia, 30152.

16.     Janella Simpson is an individual and resident of the state of Florida. She may be served with process at 405 N.E. 2nd Street, Apartment 2207, Fort Lauderdale, Florida, 33301.

17.     LaChelle Pierre is an individual and resident of the State of Texas. She may be served with process at 2011 Highland Hills Drive, Sugar Land, Texas, 77478.

18.     Kenneth Lloyd is an individual and resident of the state of Texas and a director of Tava Ventures, Inc. He may be served with process at 4002 Silver Ridge Blvd, Missouri City,

Texas 77459.

19.     Chante Lloyd is an individual and resident of the state of Texas and a director of Tava Ventures, Inc. She may be served with process at 4002 Silver Ridge Blvd, Missouri City, Texas 77459.

20.     Terry LaCore is an individual resident of the state of Texas and a director of Tava Ventures, Inc. He may be served with process at 522 Lacore Lane, Melissa, Texas, 75454

21.     Jenifer Grace is an individual and resident of the state of Texas and a director of Tava Ventures, Inc. She may be served with process at 2506 Capitol Place, Melissa, Texas, 75454.

22.     Ark Ventures is an unincorporated entity with its principal place of business located at 4002 Silver Ridge Blvd, Missouri City, Texas, 77459.

## FACTUAL ALLEGATIONS

23.     Health and wellness products are a roughly four trillion-dollar industry littered with fly-by-night Multi-Level Marketing ("MLM") schemes peddling derivative (often over the counter) "nutritional" supplements; the efficacies of which have neither been reviewed nor approved by the Food and Drug Administration.

24.     One of the latest—and perhaps one of the most pervasive—of such schemes is Tava Lifestyle, LLC, a Tava Ventures, Inc. company, a peer-to-peer multi-level marketing company in the business of selling and distributing products through individual "Associates" all over the world.

25.     According to its website, Tava is based in Melissa, Texas and purportedly fulfills nutritional product orders via a business model that "not only allows for income opportunity, but also residual income, so [its members] have the freedom to spend more time doing the things [they] love."

26.     Tava claims to observe "[t]he Four Pillars" of (1) health; (2) income; (3) love; and (4) happiness with a mission "to provide a safe and fair environment for people to exercise their gifts and talents with the goal of creating a better life for themselves and their families"—whatever that means.

27.     Tava's founders, Kenny and Chante Lloyd even bill Tava as "a safe haven for everyone," without further explanation, and have the gall to promote Tava as "not just different, [but also] real" in various places on its online and social media presence.

28.     In reality, Tava is no safe haven; rather, Tava is a predatory pariah peddling religion and faith laden promises of wealth by dangling the success of its founders Kenny and Chante Lloyd as attainable, while nickel and diming Associates and their networks all the way.

### Tava Partners' History of Defrauding MLM Customers and Members/Associates

29.     One of Tava's financial partners is Terry LaCore, a well-known player in the MLM space, along with another top executive, allegedly violated federal law by making and receiving approximately $2.5 million in undisclosed payments from distributors in a previous multi-level marketing company.[2]

30.     Indeed, Terry LaCore's long history in the MLM space has seen him involved in a host of failed and ongoing MLM companies, some which include b:hip, Elomir, Pruvit, Ur Worth It, NucleoGenex, and MCM Nutrition, all of which market similar—if not identical—health products that allegedly work miracles, not only for one's health, but for growing wealth.

31.     Terry LaCore and his companies' conduct are so egregious that the Federal Trade Commission and other private actors have on a number of occasions warned Pruvit (another LaCore MLM, like Tava) and members  to cease making false statements regarding the efficacy

---

[2] https://www.cfo.com/risk-compliance/2008/09/ex-cfo-settles-self-dealing-fraud-charges/

of its products to treat COVID-19 and the actual ingredients used in their products.[3] Indeed, the Federal Government has outright declared that LaCore **misrepresent[s] that consumers who become Pruvit business opportunity participants are likely to earn substantial income."[4]**

32.     LaCore is the only common denominator among these illicit MLM schemes. And LaCore and his cronies (select few, like Kenny and Chante Lloyd) alone make millions of dollars atop multiple pyramids while the companies' sellers and consumers pay the tab.

33.     Notwithstanding their knowledge of LaCore and his companies' known reputation for intentionally defrauding consumers and members, the Lloyds still intentionally pitch Tava to unsuspecting and gullible consumers and members in search of a financial miracle as a faith-based organization by deploying mantras and references to lure "Associates."  In fact, when translated from Hebrew, the word "tava" itself is "Noah's Ark"—the ultimate biblical safe haven—of course, to cement the company's purported mission to "rescue people" from the "storms of life."

34.     But there is nothing biblical, miraculous, or even different about Tava.  In reality, Tava is not unique at all. It is just another one of LaCore's peer-to-peer MLM companies selling typical products via typical methods, and offering typical business model and compensation plans all of which enrich Terry LaCore, Kenny and Chante Lloyd, and the other Associate Defendants who find themselves at the top, or near the top, of the pyramid.

35.     While these defendants reap significant financial gain, Associates put in ungodly amounts of effort and work towards sales and recruiting from their "Associates"—the same associates whom Tava has promised freedom from the grueling aspects of a typical job and offered "the flexibility to work from anywhere." And these associates are the same target market that the

---

[3] https://www.ftc.gov/system/files/warning-letters/covid-19-letter_to_pruvit_ventures_inc.pdf
https://oag.ca.gov/system/files/prop65/notices/2020-01630.pdf
[4] https://www.ftc.gov/system/files/warning-letters/covid-19-letter_to_pruvit_ventures_inc.pdf

Federal Government has warned LaCore to stop misrepresenting his MLM's potential for generating substantial income.

36.     And if LaCore and the Lloyds' religious call to action were not enough, the Lloyds and other high ranking Tava Associates regularly flaunt their lifestyle in public speaking appearance, podcasts, and YouTube featurettes.  Most recently, Kenny Lloyd himself appeared in an "MTV-Cribs" style interview in home, wherein Lloyd—donning a TAVA hoodie throughout—showed off his mansion, multiple half-million dollar cars, and lavish furnishings all to knowingly peddle an unattainable lifestyle to consumers and members.[5]

**Tava's Business Model Exploits New Members**

37.     Tava's website purports to show the advantages of joining Tava as an Associate. In reality, the experiences described on the website are limited to Associate Defendants. For instance, Tava entices individuals to become Associates by peddling the dream of world-wide travel or the opportunity to obtain exotic cars—like the ones Lloyd promotes via multiple mediums.

38.     One of the ways Tava does this is through its Tava Car Program, which requires Associates to maintain a ranking of "Diamond" through their active period as an Associate.  How one reaches that status, however, is laden with a morass of confusing payment structures and "active" membership requirements that makes achieving this benefit almost impossible, except for the Associate Defendants in the top positions.

39.     Each Tava "Associate" is an independent seller and distributor who must first pay Kenny and Chantel Lloyd to gain membership to Tava and the privilege of being an Associate. But that is only the first of the regular and exorbitant amounts required from Associates for the

---

[5] https://www.youtube.com/watch?v=ugSKQCz9vew

7

privilege of associating with the Lloyds and for glimpses of the promise of attaining similar wealth as the Lloyds'.

40.     Next, an Associate must purchase Tava products, the purchase price of said product ranges from $64.95 for individual purchases to $1,200 for differing packages and imposes quantity limits and restrictions on the order and sale of such products.

41.     Then the Associate attempts to resell those products in the marketplace with seemingly little or no pricing help from the Lloyds or anyone at all from Tava.  Indeed, Tava does not even bother to deploy fair pricing guidelines among its associates and their recruited selling associates.  The effect being that a single Tava product can be found online for prices ranging from $20.00 to $85.00 for the exact product, creating unreasonable competition between Lloyd/Tava associates.

42.     The Lloyds and Tava don't care at all about consumer demand or the success of their product once it has been paid for by the Associates. Rather, demand for Tava is driven by Associates' ambition to advance in Tava's marketing program and ostensibly attain the wealth of Kenny and Chantel Lloyd.

43.     The other route for an Associate to fulfill his or her dreams of traveling the world without a care or driving the most exotic and expensive cars is to identify and sign-up additional Associates. Tava refers to this as Personally Sponsoring Distributors.

44.     Just like other pyramid type schemes, an Associate must entice two other people to join his network. The two additional Associates must not only pay the Lloyds a membership fee, but they too must also purchase products for sale.

45.     According to Tava, once there are two sponsored Associates, the Associate at the top of the triangle begins to earn profits from the sale and distribution of products from the two

sponsored Associates. Of course, there are a number of caveats to how any given Associate's compensation is calculated, one of which requires all in the pyramid to remain "active" for a payout, even if an Associate had already purchased a large sum of products.

46.     According to Tava's compensation plan, once an associate completes the initial steps of paying the membership fee, soliciting two other people, and remaining active through his anniversary, the associate "can benefit from all of the incredibly rewarding and lucrative components of the Tava Compensation Plan."

47.     These requirements, however, are not applied to Ark Ventures, a separate entity the Lloyds and LaCore created to pay themselves monies they do nothing to earn. Unlike other associates, Ark Ventures sits at the top of the pyramid as "grandfathered-in" by the Lloyds and LaCore and does not need to pay any membership fees or purchase and sell any products. In other words, Ark Ventures is paid off the sweat and labor of Tava's associates, netting the Lloyds and LaCore not only distribution income from sale of Tava products to associates and by associates, but also as owner of Tava itself.

48.     Moreover, according to Tava's policies, an associate may not have more than one entity identified as a distributor, This, of course does not apply to the Lloyds, who have three separate entities—Ark Ventures, Ark Ventures 1, and Ark Ventures 2.

49.     And even more insidiously, neither the Lloyds nor LaCore found it fit to disclose the existence of Ark Ventures to any Tava associates in the associate agreement.

## Tava's Policies and Procedures Expose's Associates to Liability for Violating Federal Law

50.     According to the Tava Policies and Procedures, Tava grants each Associate a non-exclusive right to purchase Tava products, promote and market those products, and sell those products.

51.     As such, Associates are given access to Tava's branding, marketing, and training materials and processes. With this access, Associates can create and market Tava's products on Tava's webpage directly linked to that Associate or on the Associate's social media page.

52.     The Associate Defendants are just some of Tava's Associates. Each of them has a specific webpage where they market Tava products, not including their personal social media pages. Tava has thousands of Associates nationwide who market and sell its products.

53.     In addition, Tava's policies demand that these Associates comply with all Federal, state, and local laws, and—despite the Associate Defendants and the Lloyds' lavish lifestyle and resources—makes its Associates solely responsible to pay all fines or other liabilities for any action of the Associate that violates the law in their sale of Tava products, including the infringing conduct alleged herein, for which—because of Tava's policies—render each selling Associate liable under federal law.

**LaCore, the Lloyds, and Tava Circularly Enrich
Themselves at the Expense of Associates**

54.     The larger an Associate's network, the more money an Associate stands to make. This is the teaching of the Lloyds/Tava: exploit your network for every last penny.  Indeed, the Lloyds and their affiliated business endeavors—like the ones described herein—are circularly enriched by Associates at every turn.

55.     For instance, LaCore Enterprises, LLC, a company owned and operated by Terry LaCore, is the majority shareholder of Tava. Among other things, **LaCore Enterprises is Tava's management, distribution, and manufacturing arm.** LaCore Enterprises not only engages production sources, such as farmers and manufacturers for the development of ingredients used in Tava's products, but it also controls the manufacture of the product packaging and their distribution to associates and the marketplace.

56.     To manufacture Tava's products, Tava engages another one of Terry LaCore's companies; **LaCore Nutraceuticals, which manufactures the actual product and the product packaging**. And Tava engages yet another LaCore entity; **LaCore Logistics, to distribute Tava's products all over the country to the Lloyds' loyal flock of Associates**.

57.     Because of this circular enrichment, and because there is nothing unique about Tava, its products, or its peer-to-peer, multi-level-marketing structure or even its lazy attempt at holding religion, faith and prosperity as a rod and carrot over its Associates, many, including multiple websites dedicated to reviewing entrepreneurial opportunities have asked a singular question, which may also be appropriately asked before this Court: "Is Tava Lifestyle a scam?"[6]

58.     Indeed, along with manufacturing the litany of Tava products, the LaCore Companies manufacture and distribute similar, or even identical, products nationwide, packaged to meet the branding of any one of Terry LaCore's MLM companies.

59.     Knowing that their unoriginal products and equally unoriginal faith-based appeal tactic would not set them apart in gaining more cash cow Associates; and knowing that a simple Google search of "Terry LaCore" would produce results and warnings spanning decades of Federal Law violations by LaCore,  the Lloyds' and Tava engaged and deployed a true marketing professional who could legitimize LaCore, the Lloyds', Tava and their respective businesses and products by making them look like they belonged in a catalogue or on a shelf or in any myriad of spaces that would calm the questions about LaCore, the Lloyds' and Tava's legitimacy.

## Tava Engages ShockTheory to Legitimize Itself in the Marketplace

60.     On or about January 10, 2020, the Lloyd's and Tava engaged Sonja N. Williams and her company ShockTheory DLV ("ShockTheory").  Sonja N. Williams is an entrepreneur and

---

[6] https://www.scamrisk.com/tava/

businesswoman. Sonja N. Williams is the founder and Chief Executive Officer of ShockTheory and leads the company as its head digital designer and producer and is responsible for creating and launching award-winning marketing campaigns, delivering high-quality product designs, web platforms and executing large-scale live events around the country.

61.     ShockTheory DLV, Inc., is a Georgia-based full-service advertising agency that provides digital marketing and branding solutions for corporate and government entities; live event and video productions services for conferences, festivals, and concerts; and software development for web-based platforms and mobile applications.

62.     Indeed, (unlike Tava) ShockTheory has a proven track record of working with legitimate business, including Fortune 500® companies and other brands, which are household names.  For this reason and hoping that affiliating itself with Williams and ShockTheory would provide LaCore, the Lloyds, and Tava with legitimacy, Tava engaged Williams.

### Sonja Williams Becomes a Tava Associate

63.     Williams, a single mother of two, is an award-winning thought leader and culture shifter, democratizing access to technologies and ecosystems to underserved audiences. Her numerous accolades include "Non-Traditional Business of the Year" by the prestigious Atlanta Business League; and "Entrepreneur of the Year" during the 2011 PowerNetworking Conference for Entrepreneurs among many others. For over 13 years, Williams has been a staple as a featured keynote speaker for many organizations such as Microsoft, Georgia Tech, and others.

64.     Williams has served as executive producer and creative director of mega conventions at the MGM Grand Arena and Mandalay Bay in Las Vegas, Nevada, the Houston Toyota Center, the Georgia World Convention Center, and New Orleans' Super Dome for organizations such as Organo Gold, an international gourmet coffee maker where she has broken

industry records by creatively mixing the use of consumer-engagement digital content with live, high-end show productions - making the convention the best in the industry as voted by Success Magazine.

65.     Williams is also a devout Christian who upon learning of Tava and its faith-based mission and goals decided to take advantage of the opportunity being peddled by LaCore and the Lloyds.  As such, Williams paid the requisite fees to Lloyds and/or Tava and became an Associate on or about March 6, 2020.

66.     Immediately after paying the fee and ordering the products, Williams was given a personal website where she could advertise, market, and sell Tava products—the same products and package designs Williams herself created.

### Tava and ShockTheory Contract

67.     After generally agreeing to terms, ShockTheory and Tava entered into an Agency Consulting Agreement (the "Agreement") on or about January 10, 2020.

68.     The Agreement expired on its written terms on May 9, 2020.

69.     Based on the Agreement, ShockTheory developed marketing materials, Tava's website, and video and production and event planning materials for Tava.

70.     After the expiration of the Agreement on May 9, 2020, Tava requested that Williams design labels and product packages for several Tava products so that Tava could legitimize its products in the marketplace.

71.     Those designs included the Flare Logo Design, Kaprese Logo Design, Vacia Logo Design, and the Vale30 Logo Design (together the "Package Designs") pictured below:







must be over 18 to purchase



72. Tava did not, and has never, obtained a license or ownership of the Package Designs.

**Tava's Manufacture, Marketing, and Distribution of the Products with Package Designs**

73. Not long after Williams completed the Package Designs, the Corporate Defendants began mass producing Tava products with the Package Designs.

74. The Corporate Defendants immediately began marketing and selling the products with the Package Designs through Tava's website and at marketing and branding events all over

14

the country.[7]

75.    Many of those events occurred in Texas, including in the Dallas-Fort Worth Metroplex.

76.    Moreover, because of Tava's multi-level marketing structure, thousands of Tava's Associates, including the Associate Defendants, have all published, marketed, and sold Tava's products with the Package Designs on their personal social media accounts or on Tava's sponsored website.[8] For instance:



77.    This marketing effort continues to this day, including most recently on or about November 26, 2022, on LaChelle Pierre's YouTube page[9] and in the Lloyds' YouTube video celebrating the success of Tava.[10]

78.    Prior to the Corporate Defendants infringing on Williams and ShockTheory's rights and ownership to the Package Designs, in July 2020, Williams demanded that the Corporate

---

[7] https://www.tavalifestyle.com/shop/
[8] http://firstdynasty.tavalifestyle.com/;http://momswithfavor.tavalifestyle.com/;http://moorerfit.tavalifestyle.com/;http://beautyqueen.tavalifestyle.com/
[9] https://www.youtube.com/watch?v=2-21-z8QoGg
[10] https://www.youtube.com/watch?v=ugSKQCz9vew

Defendants cease use of its Package Designs in the manufacture, marketing, branding, and sale of their products.

79.    The Corporate Defendants ignored Williams' demand.

80.    Williams registered the Package Designs with the United States Copyright Office under Reg. No.  VAu 1-470-828 on May 12, 2022.

81.    Given Tava's multi-level sales scheme, Tava and the other Defendants have manufactured, reproduced, and sold millions of infringing products with the Package Designs.

82.    In fact, Tava's general counsel testified that the Package Designs are the exact packaging Tava and the other Defendants have used in the manufacture, marketing, and sale of the infringing products.

83.    Further, because of Tava's agreement with its Associates, Tava's Associates have and continue to infringe on Williams and ShockTheory's copy rights in the Package Designs, the infringement which continues to this day.[11]

## COUNT I
## COPYRIGHT INFRINGEMENT
### (Against all Defendants) (17 U.S.C. § 501)

84.    Plaintiffs repeat and realleges the allegations set forth in paragraphs 1-83 above as if fully set forth herein.

85.    At all relevant times, Plaintiffs remained the owners of and had the exclusive rights in the Package Designs, which have been duly registered with the Copyright Office under Reg. No. VAu 1-470-828.

86.    As evidenced by the copyright registration, the Package Designs are original work and subject to copyright protection.

---

[11] https://tavalifestyle.com/shop-2/?category=tavafit

87.     Defendants' actions are an infringement of Plaintiffs' exclusive copyright interests in the Package Designs.

88.     Specifically, the Corporate Defendants reproduced the Package Designs without authorization, including, on information and belief, into a digital file, which they used to package and label the infringing products.

89.     Additionally, the Corporate Defendants reproduced the Package Designs and/or prepared derivative works of the Package Designs—without authorization—which they used to package, label, market, publicly display, and sell the infringing products on their websites, through social media channels, at trade shows, and through third-party retailers.

90.     On information and belief, the Corporate Defendants, LaCore, Grace, and the Lloyds have committed all of the aforesaid acts of infringement knowingly, deliberately, and willfully, as they were aware that the Corporate Defendants had not obtained a license nor ownership of the Package Designs.

91.     Plaintiffs have sustained, and will continue to sustain, substantial injuries, loss and damage to her exclusive rights in the Package Designs, and further have sustained and will sustain damages from the loss of value of her exclusive rights by reason of Defendants' conduct.

92.     Defendants' copyright infringement has damaged Plaintiffs in a sum not presently known but believed to be significant.

93.     Plaintiffs are entitled to actual and statutory damages, disgorgement of Defendants' profits attributable to the infringement, attorneys' fees, and the impoundment and destruction of the infringing products and all unauthorized copies of the Package Designs.

### COUNT II
### CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT

94.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1-93 above as

if fully set forth herein.

95.     In addition to directly infringing Plaintiffs' rights in the copyrighted Package Designs, all Defendants, with knowledge of the infringement, caused and materially contributed to the infringing activities of Tava's Associates, including the Associate Defendants, and contributed to the infringement by other manufacturers, retailers, and others involved in the manufacture, creation, distribution, and sales of the infringing products.

96.     Specifically, the Corporate Defendants, LaCore, Grace, Harris, Kenneth Lloyd, and Chante Lloyd provide Associates with Tava's Policies and Procedures and Associate agreement, in which Tava represents it has the legal right to use the Package Designs even though they knew they had no license or legal right to do so, and caused Tava's Associates and third parties to manufacture, market, and sell infringing products with the Package Designs.

97.     On information and belief, the Corporate Defendants, LaCore, Grace, Harris, Kenneth Lloyd, and/or Chante Lloyd communicated directly with manufacturers of the infringing products and provided one or more infringing copies of the Package Designs to facilitate the creation of the infringing products and communicated with retailers and other third parties to facilitate the distribution and sales of the infringing products.

98.     Each of the above actions by the Corporate Defendants, LaCore, Grace, Harris, Kenneth Lloyd, and Chante Lloyd directly infringed Plaintiffs' rights in the Package Designs and contributed to Defendants' infringement.

99.     In addition to directly and contributorily infringing the copyrighted Package Designs, the Corporate Defendants, LaCore, Grace, Harris, Kenneth Lloyd, and Chante Lloyd are liable for vicarious copyright infringement because they had the right and ability to supervise the infringing Associates and third parties and had an obvious and direct financial interest in the

exploitation of the copyrighted Package Designs.

100.     Specifically, as the sole owners and officers of the Corporate Defendants, LaCore, Grace, Harris, and Kenneth Lloyd had the right and ability to supervise the unauthorized acts of photographing the Package Designs, designing the infringing products, having the infringing products manufactured, having the infringing products sent to retailers for marketing and sale, and directly selling the infringing products through the Tava and their Associates' websites and social media sites.

101.     As the sole owners of Tava, LaCore, Kenneth Lloyd, and Grace have a direct and obvious financial interest in the sales of the infringing products, which were created by copying the Package Designs.

102.     Moreover, LaCore, Kenneth Lloyd, and Grace, as the managing officers of the Corporate Defendants had the right and ability to supervise the unauthorized acts of photographing the Package Designs, designing the infringing products, having the infringing products manufactured, and having the infringing products sent to retailers for marketing and sale.

103.     LaCore, Kenneth Lloyd, and Grace have a direct and obvious financial interest in the sales of the infringing products, which were created by copying the Package Designs.

104.     On information and belief, the Corporate Defendants, LaCore, Grace, Harris, Kenneth Lloyd, and Chante Lloyd have committed all of the aforesaid acts of infringement knowingly, deliberately, and willfully.

105.     Plaintiffs have sustained, and will continue to sustain, substantial injuries, loss, and damage to her exclusive rights in the Package Designs, and further have sustained and will sustain damages from the loss of value of her exclusive rights by reason of the Defendants' conduct.

106.    The Defendants' copyright infringement has damaged Plaintiffs in a sum not presently known but believed to be significant.

107.    Plaintiffs are entitled to actual and statutory damages, disgorgement of the Defendants' profits attributable to the infringement, attorneys' fees, and the impoundment and destruction of the infringing products and all unauthorized copies of the Package Designs.

**COUNT III**
**FALSE DESIGNATION OF ORIGIN, UNFAIR COMPETITION (15 U.S.C. § 1125(a))**

108.    Plaintiffs repeat and realleges the allegations set forth in paragraphs 1-107 above as if fully set forth herein.

109.    Plaintiffs are the legal owners of the copyright for the Package Designs. The Corporate Defendants, LaCore, Grace, Harris, Kenneth Lloyd, and Chante Lloyd's unauthorized use of the Package Designs and their representations of authority to utilize the Package Designs to Tava's Associates, third party manufacturers, and retailers is deceptive, misleading, or a false designation of the origin of the Package Designs in the manufacture of the infringing products.

110.    The Corporate Defendants, LaCore, Grace, Harris, Kenneth Lloyd, and Chante Lloyd's false representations of authority to use the Package Designs in the manufacture and sale of the infringing products is likely to cause confusion, mistake, or to deceive Tava's Associates and the public as to the affiliation, connection, authority, or association of Package Designs in the manufacture of the infringing products.

111.    The Corporate Defendants, LaCore, Grace, Harris, Kenneth Lloyd, and Chante Lloyd's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Package Designs and have misappropriated the Package designs and the associated goodwill, which were created through Plaintiffs' skill and labor.

112.    The Corporate Defendants, LaCore, Grace, Harris, Kenneth Lloyd, and Chante

Lloyd's activities are causing and will continue to cause a likelihood of confusion and deception of Tava's Associates, members of the trade and public, and, additionally, injury to Plaintiffs' goodwill and reputation, for which Plaintiffs have no adequate remedy at law.

113.    Furthermore, Plaintiffs have suffered, and will continue to suffer, substantial damages, while the Defendants have reaped substantial profits.

114.    As a result, Plaintiffs are entitled to a preliminary injunction and upon a trial, a permanent injunction, and to recover from Defendants profits, as well as Plaintiffs' actual damages and costs and fees incurred in connection with this action, in an amount to be determined at trial.

## COUNT IV
## UNJUST ENRICHMENT

115.    Plaintiffs repeat and realleges the allegations set forth in paragraphs 1-114 above as if fully set forth herein.

116.    The Defendants have intentionally violated Plaintiffs' copyrights, despite Plaintiffs' demand that Defendants cease such activity, by utilizing, manufacturing, marketing, and selling infringing products with Plaintiffs' Package Designs, and have reaped significant financial return in such endeavors.

117.    It is unconscionable for Defendants to reap such significant financial benefits in the use of Plaintiffs' Package Designs in the manufacture, marketing, and sale of the infringing products without adequate compensation to Plaintiffs.

118.    Plaintiffs are entitled to recover under the theory of unjust enrichment for Defendants' intentional and knowing, or inadvertent violation of Plaintiffs' copyrights in the Package Designs.

119.    Furthermore, Plaintiffs have suffered, and will continue to suffer, substantial damages, including commercial damage, while Defendants have reaped substantial profits.

120.    As a result, Plaintiffs, at the conclusion of this matter, are entitled to a permanent injunction and to recover Defendants' profits, as well as Plaintiffs' actual damages and costs and fees incurred in connection with this action, in an amount to be determined at trial.

121.    Furthermore, in light of the Defendants deliberate use of Plaintiffs' Package Designs, and the need to deter Defendants from engaging in similar conduct in the future, Plaintiffs are entitled to an award of exemplary damages.

## COUNT V
## VIOLATIONS OF SECTION 10(b) OF SECURITIES EXCHANGE ACT

122.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1-121 above as if fully set forth herein.

123.    Tava's compensation plan is merely a pyramid scheme under which associates are required to invest by paying a membership fee and purchasing products. Once an associate purchases product, that associate retains its "membership" for one year, after which the associate must pay another fee to continue to receive compensation.

124.    Moreover, based on Tava's compensation plan, associates such as Williams are executing investment contracts that derive the primary benefit from downhill associates. In other words, an associate reaps substantial benefits from the efforts of others lower on the pyramid with little effort, other than purchasing products.

125.    The Corporate Defendants, LaCore, Kenneth Lloyd, and Chante Lloyd, and Tava misrepresented the to Williams and other associates that the distributorship agreement was an investment contract and that the primary basis of any profits was based on the work and labor of all others below her in the pyramid.

126.    By representing that Williams and other associates would derive profits, a certain lifestyle, and other "rewarding and lucrative" benefits from joining the Tava pyramid, the

Corporate Defendants, LaCore, Kenneth Lloyd, and Chante Lloyd, and Tava misrepresented a material fact, which they knew was untrue when they enticed Williams and other associates to join Tava as an associate.

127.    Moreover, LaCore, Kenneth Lloyd, and Chante Lloyd, and TAVA engaged in false, misleading, and/or deceptive acts or practices that Plaintiffs relied on to Plaintiffs' detriment, including that TAVA's products were faith-based, unique and provided a business opportunity wherein participants are likely to earn substantial income.

128.    These various misrepresentations were indented to and did in fact entice Williams to purchase Tava associateship by paying LaCore, Kenneth Lloyd, and Chante Lloyd, and TAVA fees for association and by buying derivative Tava products, which are not the unique products they market themselves to be and fail to yield the wealth claimed by LaCore, Kenneth Lloyd, and Chante Lloyd, and TAVA.

129.    Williams was damaged by her reliance on these misrepresentations up to and including all money damages incurred in her purchase and storage of Tava products and all other damages available at law or in equity, including noneconomic damages and mental anguish damages.

## COUNT VI
## DECEPTIVE TRADE PRACTICES ACT

130.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1-129 above as if fully set forth herein.

131.    Williams is a consumer as defined by Tex. Bus. & Com. Code Ann. § 17.46, because Williams is an individual who acquired goods and services from Tava ranging from her Associate fee to the products donning the Package Designs made basis of this dispute.

132.    The Corporate Defendants, LaCore, Kenneth Lloyd, and Chante Lloyd, and

TAVA's actions as described herein also violate the Texas Deceptive Trade Practices Act ("DTPA").

133.    Indeed, LaCore, Kenneth Lloyd, and Chante Lloyd, and TAVA engaged in false, misleading, and/or deceptive acts or practices that Plaintiffs relied on to Plaintiffs' detriment, including that TAVA's products were faith-based, unique and provided a business opportunity wherein participants are likely to earn substantial income.  As discussed in detail herein, the Federal Government has deemed such promises of a likelihood to earn substantial income as provably false "misrepresentations.

134.    These various misrepresentations were indented to and did in fact entice Williams to purchase Tava associateship by paying LaCore, Kenneth Lloyd, and Chante Lloyd, and TAVA fees for association and by buying derivative Tava products, which are not the unique products they market themselves to be and fail to yield the wealth claimed by LaCore, Kenneth Lloyd, and Chante Lloyd, and TAVA.

135.    Williams was damaged by her reliance on these misrepresentations up to and including all money damages incurred in her purchase and storage of Tava products and all other damages available at law or in equity, including noneconomic damages and mental anguish damages.

136.    Plaintiffs are also entitled to recover reasonable and necessary attorney fees for prosecuting this suit under Texas Business & Commerce Code section 17.50(d).

### COUNT VII
### CIVIL CONSPIRACY

137.    Plaintiffs repeat and realleges the allegations set forth in paragraphs 1-135 above as if fully set forth herein.

138.    The Corporate Defendants, LaCore, Grace, Harris, Kenneth Lloyd, and Chante

Lloyd, together, agreed to manufacture, sell, and distribute products utilizing the Package Designs with knowledge that none of them had a right to use such Package Designs, and thereby violated Plaintiffs' copyrights.

139.    In furtherance of such conspiracy, the Corporate Defendants, LaCore, Grace, Harris, Kenneth Lloyd, and Chante Lloyd, together, persuaded, convinced, deceived, and conned Tava's Associates world-wide into executing Associate agreements to sell and distribute products utilizing the Package Designs with knowledge that none of them had the right to use such Package Designs or authorize Associates to use such Package Designs.

140.    In furtherance of such conspiracy, the Corporate Defendants, LaCore, Grace, Harris, Kenneth Lloyd, and Chante Lloyd, together, misrepresented, deceived, mislead, and falsely designated the origin of the Package Designs to not only Tava Associates, but to the general public, representing they were authorized to utilize the Package Designs in the manufacture, sale, and distribution of Tava's products.

141.    In furtherance of such conspiracy, the Corporate Defendants, LaCore, Grace, Harris, Kenneth Lloyd, and Chante Lloyd, together, represented to Tava's Associates they had the legal right to use the Package Designs even though they knew they had no license or legal right to do so, and caused Tava's Associates and third parties to manufacture, market, sell, and distribute infringing products with the Package Designs and thereby violating Plaintiffs' copyright.

142.    Such conduct of the Corporate Defendants, LaCore, Grace, Harris, Kenneth Lloyd, and Chante Lloyd, together, was in furtherance of their conspiracy to defraud, Tava's Associates, infringe Plaintiffs' copyright, and avoid the attention of Federal Trade Commission and States' Attorneys' General.

143.    Such conduct of the Corporate Defendants, LaCore, Grace, Harris, Kenneth Lloyd,

and Chante Lloyd, together, was in furtherance of their conspiracy to violate the Federal Trade Commission Act, related federal and state anti-trust and consumers laws, and goad the general public into believing that they had the right and legal authority to manufacture, sell, and distribute products with the infringing Package Designs.

144.    The Corporate Defendants, LaCore, Grace, Harris, Kenneth Lloyd, and Chante Lloyd, together, through their conduct, have caused damage to Plaintiffs, which Plaintiffs have suffered, and will continue to suffer, while Defendants have reaped substantial profits.

**JURY DEMAND**

145.    Plaintiffs demand a jury trial.

**PRAYER**

**WHEREFORE**, Plaintiffs Sonja N. Williams and ShockTheory DLV, Inc., requests that a judgment be entered in their favor against Defendants as follows:

(a)    Permanent injunction enjoining Defendants and their officers, directors, agents, employees, successors, assigns and attorneys, and all other persons or entities in active concert or participation with Defendants who receive notice of the injunction by personal service or otherwise, from doing, aiding, causing or abetting the following:

• reproducing, manufacturing, selling, displaying, advertising, marketing, creating, or distributing the infringing products or any items that contain the Package Designs, substantially similar copies thereof, derivative works thereof, or in any way resemble other works created by Sonja N. Williams and/or ShockTheory DLV, Inc., including from all online and retail

locations; and

- directing Defendants to destroy the infringing products or other items that contain the Package Designs, derivative works thereof, or in any way resembled works created by Sonja N. Williams and/or ShockTheory DLV, Inc., as well as goods or marketing materials bearing the package Designs, or any confusingly similar variation thereof, in Defendants' possession, custody or control;

- directing Defendants to notify each of its Associates to stop and refrain from reproducing, manufacturing, selling, displaying, advertising, marketing, creating, or distributing the infringing products or any items that contain the Package Designs, substantially similar copies thereof, derivative works thereof, or in any way resemble other works created by Sonja N. Williams and/or ShockTheory DLV, Inc., including from all online and retail locations; and

- directing Defendants to notify each of its Associates to destroy the infringing products or other items that contain the Package Designs, derivative works thereof, or in any way resembled works created by Sonja N. Williams and/or ShockTheory DLV, Inc., as well as goods or marketing materials bearing the package Designs, or any confusingly similar variation thereof, in Defendants' possession, custody

27

or control;

(b)    awarding Plaintiffs actual, statutory, and exemplary damages in an amount to be determined at trial;

(c)    awarding Plaintiffs disgorgement of all profits received by Defendants as a result of the conduct described in this Complaint;

(d)    awarding Plaintiffs the costs, fees and expenses incurred in this action, including without limitation, reasonable attorneys' fees  under 17 U.S.C. § 505, and to the extent otherwise permitted by law;

(e)    awarding pre-judgment and post-judgment interest on all sums awarded in the Court's judgment; and

(f)    awarding Plaintiffs such other and further relief as the Court may deem just and proper.

Respectfully submitted,

**BURKE BOGDANOWICZ PLLC**

**Keron A. Wright**
Texas Bar. No. 24175311
*kwright@burkebog.com*
1201 Elm Street, Suite 4000
Dallas, Texas 75270
Tel/Fax 214.888.2824
**ATTORNEYS FOR PLAINTIFFS**

**ANOZIE LLP**

*/s/ Nnamdi M. Anozie*_____
**Nnamdi M. Anozie**
Texas Bar No. 24087107
*nma@anoziellp.com*
6120 Swiss Avenue, #140838
Dallas, Texas 75214
Tel/Fax 214.606.3440
**ATTORNEYS FOR PLAINTIFFS**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing document has been served to all parties pursuant to this Court's electronic filing system and in accordance with the Texas Rules of Civil Procedure on the 21st day of April 2023.

_____
**Keron A. Wright**